v. Microstrategy, Inc. Mr. Prudence. Thank you very much. Good morning. May it please the Court. In January of 2005, this Court remanded this case to the District Court, holding that Business Objects was entitled to attempt to prove that the query engine means in the accused products was substantially equivalent to that in the patent. Unfortunately, for all practical purposes, Business Objects was denied that opportunity. Immediately upon remand, with no new evidence, no evidentiary hearing, based on a single declaration that dealt only with very selective portions of the accused product, the District Court entered summary judgment once again, finding that there was no infringement of the patent in suit. He had a pretty thorough analysis, didn't he? I don't believe he did. Pointing out differences? Well, first of all, I don't think it was a very thorough analysis because I don't think there was sufficient evidence before the District Court to do that. The Court did focus on certain specific differences. However, in so doing, the District Court ignored this Court's admonition in numerous cases, and I would point in particular to the Caterpillar case and the Liggett case from 2000 and 2002 respectively. That isn't what counts here, what the accused is and what the claims recite, and we're talking about a fact question, right? We are. We owe deference to the trial court. We also owe deference to the fact that there were disputed questions of fact. In fact, this Court has repeatedly observed that the question of finding equivalence is often a very difficult one on a factual basis, and that if it's difficult in a mechanical case or a chemical case, in a software case such as this, where the structure exists only in cyberspace, it becomes especially difficult. But the claimed query means has predefined ways of reaching the joins, right? If I want to know the number of cars Ford has bought in Fairfax County, I've got to connect Ford County year, and the claimed method has a predetermined way of connecting those categories, right? Whereas the microsystems method doesn't. Well, Your Honor, I think your question… Joins them on the fly, kind of. Well, the district court says that, but that's just not right. The reality is that the microstrategy product has a more sophisticated way of finding those joins. Sounds like a different way. Well, more sophisticated, but the same way. And that is that the manager, and it goes without saying, that when these universes are set up, the manager must define the joins under the microstrategy product and under the business object product. That sounds like a contradiction in terms, a more sophisticated way, but the same way. Well, Your Honor, I think every invention that's ever become popular has become more sophisticated as it's used. The question is whether the essence is still there, whether the patented method is still there. If simply making an invention more sophisticated, our 17-year-old patents would become irrelevant in a very short matter of time. Well, that's almost an improvement situation where you've got a species improvement still covered by the genus. That's what I think this is. Here we're talking about, we're not arguing literal infringement. By definition here, we're talking about something that is outside the scope. Correct, and the issue is not whether microstrategy's query engine is the same. It's not. The question is whether it's equivalent, and it is. From a user's point of view, this product does exactly what this patent invented. And I should mention, it does the same thing, but we've said over and over, that's not the question that's going to govern. The question is whether it does it the same way. Or whether there are substantial differences. That's exactly right. Hasn't the trial court given us a pretty good listing of four differences here? Well, unfortunately, because of the review, which the district court itself referred to as cursory, there are serious material errors in the district court's opinion. And it comes from the fact that, frankly, the district court gave short shrift to this case. It was very complicated. And I'll point out the most important one. It's on page six of the district court's opinion. And I think the court knows that this query engine has eight relevant steps. It has eight relevant steps. And on page six, which appears in the appendix at A10007, the court says, the district court says, there is no dispute that the accused products contain none of these steps. Now that statement, with all due respect to the district court, is just flat out wrong. Dr. Rove, who is a sovereigns expert and eminently qualified, went through all eight of the steps one by one. And it starts at paragraph 65 of his declaration, which is before the court, at 40A4054. And he goes through them one by one. He finds each of them present either identically or substantially present. Select clause, initial list of tables, final list of tables, front clause, where clause, group by, having clause. The trouble, we're dealing, as you say, in cyberspace. And we all understand that there's 30, 40, 50 different ways to do the same thing. You can slightly vary the program or you can vary it quite a substantial bit. The court here finds you've varied it a substantial bit. If the variance was small, perhaps you'd have a better argument. And, Your Honor, on a full record, having heard all of the evidence, the court might well reach that conclusion. At the close of the presentation of evidence to a jury, the court might, under those circumstances, have an adequate record to reach that conclusion. But the issue here isn't who was right or wrong. The issue here is procedure. This court made factual determinations involving highly complex software technology on the fly, based on a conclusion to declaration from one expert, and by ignoring completely Dr. Rudd's contrary opinion. There are 60, from paragraph 65 to 106, Dr. Rudd goes through the microstrategy query engine, element by element by element, and cites the source code and cites the structure. He acknowledges the difference, and he explains why the differences are not substantial. In the Liggett case, this court specifically held that resolving a factual question of equivalence without regard to the contrary evidence, admissible, probative, competent contrary evidence, the issue here isn't whether business object is right. The issue is whether this judgment, a judgment of the federal court, needs to be supported by adequate evidence, and it needs to be in compliance with this court's rulings. This district court found facts based on an inadequate record and based on conclusory statements from one declaration. Moreover, that one declaration, when the district court says it's undisputed that the products contain none of these steps, Dr. Rudd's declaration only talked about three of the eight steps to begin with. He doesn't even talk about the other five steps. And what the district court's fundamental mistake was to find that if there was a difference in one particular of the eight elements... It's interesting that the very next sentence to the one that you read to us acknowledges that you presented evidence that they were insubstantially different as a whole, but dismissed that. Yeah, and that was basically a fine-rune fact... It wasn't that he ignored your point. He found that it was not substantial enough to prevail. But you don't know that's a factual determination. It's a factual determination on a complex set of facts, and the district court is not supposed to do that unless you could find that no reasonable jury... That's the standard. No reasonable jury could find the opposite. Dr. Rudd's discussion... Again, I'm not saying business officers were right. I'm saying that the district court overstepped its bounds and decided a complex factual question essentially on the fly. And he did so by finding that there were significant differences... Is this the kind of question that would be better off in the hands of the judge or the jury? The Supreme Court, if I recall, in Warner-Jenkinson, rather encouraged use of summary judgment even in the equivalence context, recognizing that the judge may have a better shot at getting it right than the jury. Is this the sort of case that would fall under that admonition? As I said, I think if the issue were fully explored, if Dr. Rudd had been subject to cross-examination, and if at the close of Plaintiff's case the district court had found a failure of proof, if on a prior record, that would be appropriate. Yes, a judge can decide this, one, if it's a very clear cut, and two, if you have a proper record. The record here is so sparse. I would also point out it's the same record. No new evidence was presented. It's the exact same record that was before this court on the first appeal. And the problem is that there's simply no principle basis on which the district court can make quick findings of fact. And it's reflected in the numerous errors in the district court opinion. Let me give you another one. The very next page, the district court decision says the lack of interchangeability of the query hinges is undisputed. Now, it's important. I'm sure that your honors know that undisputed facts are important in summary judgment. You're not supposed to grant summary judgment unless there are undisputed facts. Once again, Dr. Rudd specifically testified in his declaration at paragraph 72 that one of skill and the art would understand that the query hinges of the patent and the product could be substituted. Now, Microstrategy says, well, he's wrong. But that's what we have a trial for, to resolve those kinds of issues. And to resolve it simply on Newland declarations is simply not good jurisprudence. And it's not in accordance with this court's jurisprudence, which says there may be appropriate cases. Again, if the district court had heard all the evidence, but in fact, here it's decided largely on attorney rhetoric. And conclusions which are simply not correct. The differences and the errors in the district court's opinion, especially with regard to indicating that facts are undisputed, when in fact they really are disputed. I don't understand, frankly, based on this court's prior opinions, how the district court can simply ignore Dr. Rudd's contrary opinion. He's eminently qualified. He'd been qualified before. He explains in detail. A good example of pulling something out of context. This court has said repeatedly, you've got to look at the whole. You can't just look at one difference. In fact, there are cases where one element's very different. He says, well, there's no list of joins. Dr. Rudd points out that, although they don't use a list of joins, that each of the business objects has joins which are identified by the manager. But Dr. Rudd, if I read correctly, is more analyzing function and finding that they perform the same function rather than the structure, which is, of course, what we've got to look at in this means clause. Well, if you compare Dr. Rudd and Dr. Reddy, you will find that Dr. Rudd described each of the eight elements of the query engine. Dr. Reddy did not. So he talks about the specific elements identified in the patent. It's not just function. It's how is a having clause generated? How is a group by clause generated? How is the select clause that ultimately appears generated? The bottom line here, and I would like to reserve some time to rebuttal the comment on this tomorrow's undoubtedly trenchant comments, but the idea is this was a question of fact. And for this court to perform its role, which is de novo, you have to figure out how this complicated software really works. And I would say, reading the materials before the court, that's one heck of a job. Because what we have are a bunch of conclusory declarations drafted by lawyers, but that don't get to the nuances. And I believe this case should be sent back so that it can be decided on a full record, and we have a judgment in front of the court that's worthy of the name. Thank you. Thank you, Mr. Furness. Mr. Moe. The fact of the matter is that the district court did have a complete record before it. The fact of the matter is that the district court had two declarations before it. What we are talking about here is the query engine means, it's software, the structure is the algorithm, and even Dr. Rudd in his declaration says we have to look at the source code. That's the accused problem, the source code. What Dr. Rudd did in his declaration was to review the source code. And while counsel is fond of pointing out in the brief reiterates and regurgitates there are 106 paragraphs, 106 paragraphs, there are 106 paragraphs of differences. And the district court also had Dr. Reddy's declaration who was Michael's strategy expert. Conceitedly these things do the same thing, get to the same place. We're trying to determine whether they're doing it in the same way, whether there are substantial differences in the two source codes. Substantial, that's really factual. How substantial is substantial enough? And isn't that a question that's supposed to be made by someone other than a district judge taking a quick look at two declarations? No, I don't think that's the case, Your Honor. The United States Supreme Court infesto said what are we looking at? What are we trying to protect the patentee against? We're trying to protect the patentee against someone who comes in and makes unimportant and insubstantial changes which though they're nothing try to take it out of the patent. The issue is, are these changes insubstantial? That's really factual. You're restating the question rather than giving me an answer. The point I'm trying to make is this, Your Honor. What Dr. Rudd did in his declaration, if you look at it, is he went through, here's the specification, and here's how MicroStrategy's product works on this particular point. Differently than the way the specification operates. That's what he did. And it's not 106 paragraphs, but it's pretty close to 106 paragraphs. But what makes a difference substantial or not? Well, the fact of the matter is... We all know that you can write source code to do exactly the same thing in an infinite number of ways. And if we're going to say that those minor variations are all an independent, different invention, then we've kind of made source code inventions irrelevant, haven't we? No, we haven't, Your Honor. And if you want to look at... Let's look at the one issue the United States District Court spent a time on, in detail at the end, were the joins. Now, it is undisputed, and we went through this on the first appeal, and the opinion on the first appeal, that in the 403 patent, the manager has to sit down and has to prepare a list of joins. There must be a predetermined list of joins. It is undisputed that there is no predetermined list of joins here in the MicroStrategy system. That the joins are done someplace later on, as a matter of fact, this Court, in its opinion, pointed out, and that importantly, none of the reports, and this is the terminology that MicroStrategy uses, none of the reports, filters, templates, metrics, attributes, or facts, is tied to any specific table of a physical database, but instead, each is associated with multiple schema tables, which are, as this Court said, they are not the real tables in the database. The joins are done later. There is a difference. Now, what did the District Court say? How do we know it's a substantial difference? How do we know it's not insignificant? Well, what does the patent itself say about the joins? The patent says that the joins are important. They're important. And the joins are used repeatedly. And then what else do we find out about the joins? We find out that the way MicroStrategy does it, and this is admitted, this is in the declaration of Dr. Rudd, has advantages. The District Court points those out. Those are admitted. You see, the differences in the way the software operates and the consequences of those differences are admitted here. There really is no dispute. Yes, we don't have a predefined list of joins. Yes, we do the joins later. Because of that, we are able to optimize the selection of the tables. And what does that optimization do? It allows you when you make the inquiry, at the time of the inquiry in the MicroStrategy system, it is the query engine that will determine which tables you're going to look at undisputed on the basis of the size of those tables so that you can make the most efficient run. And why is that? And so as a result, if John Smith makes a query on Wednesday, and then the following week makes the same exact query in the MicroStrategy system, run different tables. You could be running totally different tables to get the result. Because you're optimizing. As the district court points out, that has disadvantages. Because it may not be as accurate as having a manager sit down and do this predefined list of joins that's required. Now what does Dr. Rudd add to this equation when we know we have numerous differences? You know, counsel talks about, well, there's an eight steps. And he says, well, what Dr. Rudd did, if you look at it, is he said, well, does MicroStrategy perform step one? Well, not really, but I'll find an analog. What about step two? No, but I'll find an analog. What about step three? All the way down, finding analogs, not to one step, two steps, but to all eight steps. And it is not accurate that Dr. Reddy did not address all eight steps. If there's any question in the record, it is our position that they are not equivalent, and Dr. Reddy's our expert. We're not arguing any of those steps. Was he deposed as an expert? Yes, he was. You see, that's an argument. That is a... What does business object say here? When we filed our original motion for summary judgment, we submitted a declaration of Dr. Reddy, in which we submitted it, essentially, under Federal Rules of Evidence 1006, as a compilation of... He was deposed as an expert, and the opinion came out three days later. Is that... Do you suppose that his expert deposition was fully considered? Well, no. No, Your Honor. I believe what happened was he submitted his expert report on August 16th, 2003. Business objects deposed him on August 26th, 2003. And then business objects submitted their opposition to the motion for summary judgment on August 29th, 2003. And in this case, it was August 29th, 2005, when they submitted their opposition, two years later. So they had that. Now, the district court said, I'm not relying on Dr. Reddy as an expert. But the point is, after you go through Reddy and Rudd, and say, here are all these differences, 106 paragraphs of differences. We admit their differences. There's no dispute as to the way that the MicroStrategy software operates. Both Rudd and Reddy agree. They agree there are these differences. They agree on the consequences of these differences. What does Dr. Rudd do? In some cases, not in all, but in some cases, Dr. Rudd says, well, in my opinion, they're insubstantial. A conclusory statement that they're insubstantial. So what we're really talking about is what insubstantial means. And Your Honor, the fact of the matter is that this is not like the Groucho Marx show that I used to watch when I was a kid, when it was, if you say the magic word, the duck came down out of the top, and you got 100 bucks. Say the magic word insubstantial, and I get a jury trial. That is not the law. And I'd like to also point out that Dr. Rudd doesn't always say insubstantial. What does he say on some of these? And if you look at his declaration, and I look at paragraph 78 of his declaration, which is on page A4055 of the joint appendix. As noted above, and I'm reading it because it's about the MicroStrategy software, that can be more than one choice for the table to use in the SQL that is generated for a specific query. So in MicroStrategy, what does Rudd say? What's accurate? There's more than one choice. Because as this court pointed out, things are tied, all these entities and attributes and facts are tied to multiple of these abstract tables that are created in the second level of abstraction. Therefore, the MicroStrategy query engine delays construction of the select clause. Well, we know the select clause, as this court used that term, in the 403 patent is associated with a familiar name, right there, at the very beginning, by the manager. And we know it's from that select clause that the query engine, the software, actually gets the table names because the table names are in part of that select clause  It's table name dot column. What table? What column? But the select clause, until after the final decisions have been made, on which tables to use. And then, what does he want to say? The query engine in the 403 specification constructs the select clause first. But one skilled in the art... So what does he say? It's different. But one skilled in the art would have recognized that it would have been generated later in the proceeding. That doesn't get us any place on what's substantial or insubstantial. He talks again about, in paragraph 88, the microstrategy software includes an enhancement that allows familiar names to be associated with more than one defining expression, as we just said. And microstrategy has this additional optimizing step. That's what he says here. And what's his conclusion on this? The step isn't precluded by the 403 patent. Well, that's irrelevant to the analysis of what's substantial or insubstantial. And if you look at what the district court said on joins, the district court said, we have all these differences on joins, the patent says they're important, and what do we get out of this? What does Dr. Rudd add? He has a sentence, but he doesn't point to any place in the microstrategy system where I can find the joins. He says the difference is insubstantial, even though the patent says it's important, but he doesn't tell me why. There's no analysis. Absolutely no analysis of why. And the case law, and this court has not shied away from summary judgment here. And what the court has essentially said is, in the cases we cited in our brief, and in a number of other cases, that simply because you can drag in an expert who is going to mouth the magic word without any analysis, without anything behind you, that doesn't win for you any kind of trial. And it's not warranted here. The district court was right. Thank you very much, Your Honor. Thank you, Mr. Brewer. Mr. Furness. Thank you, Your Honor. The fact that we're still sitting here talking about what the software does or does not do, seems to me to speak volumes. Because it's not even clear, even at this stage, exactly how this software is constructed. But the fallacy of the district court is very singular because all the district court did and all Dr. Reddy did was talk about some differences and said, of these eight elements, there are some differences. And that ends the inquiry. That is not the law from this circuit. He said all of them are different, didn't he? He said all of them are different, didn't he? He said all of them are different, but only talked about two of them. And since Dr. Reddy only talked about three of the eight, I don't know how you get to the fact that the other five... And Mr. Mall says, Dr. Reddy talked about all eight, and you're just going to have to go back and read it. And I did. It's not there. He doesn't talk about many of them. But let's talk about one of the differences, because I think it illustrates the issue of joins. First of all, there's a lot of confusion here. Without joins specified at the time the familiar names are set up, neither system will work. You must have joins. The MicroStrategy software is more sophisticated because it allows for more joins to be associated with the same familiar name. But it is an enhancement and improvement over a pioneer invention. It's not a different animal. But let's look at the join issue, because it illustrates very clearly the signal issue before this court. Paragraph 83 of Dr. Rudd's declaration. Mr. Mall says he's not specific, that he doesn't give reasons why, it's just wrong. He cites code and elements. But let's see what he says about joins. Paragraph 83 from A4056. Quote. The MicroStrategy software performs the function of determining the tables and joins necessary to access the data for the query in substantially the same way. It analyzes the information associated with the familiar names that appear in the template and filter to determine the facts required to provide the data needed. It also determines the analysis key, which is a set of attributes at the highest level of aggregation. It then determines the best set of tables called the best base table set. The best base table set is the final list of joins. It's not only similar, it's virtually identical. But then he goes on to say, this table consists only of the fact table. The software constructs a join tree that will ultimately hold all the tables needed for the query and the joins between them. It then finds join paths between each of the tables in the best base table set. Now, the district court's ruling in effect means that if no reasonable jury could find that a join tree, a tree structure, is fundamentally and is not substantially similar to a join list. And that's just one element. So even on that one element to say, well, it's fundamentally different. It's not. It does a tree structure instead of a list structure. Clearly, a reasonable jury could find that that is the substantial equivalent. But most importantly, and I stress this, this court has made it clear that you have to look at the whole. And there is no evidence that the court looked at the whole at any point in time. And finally, I see my time is up. I think ultimately this is a matter of procedure and a matter of the quality of justice here. This case, there was admissible evidence before this court by a highly qualified expert who gave a detailed explanation to simply ignore it. To simply ignore it and say, well, Dr. Rugg didn't say the right words. And to describe, this is very difficult stuff, Your Honors. I think you probably picked it up. These are very difficult cases. And this case was simply not handled in a way consistent with this court's rulings or with the measured application of justice. If on a full record, the trial court comes to the same conclusion, then it will be a different matter. But on this record, this was, in the worst sense of the word, a summary proceeding. And because it was summary, business objects rights have not been adequately protected. This court, I urge you to remain. Thank you, Mr. Furness and Mr. Mill. Case is taken into submission.